## FEDER et al. v. BENKERT.

### (Circuit Court of Appeals, Ninth Circuit. October 31, 1895.)

### No. 221.

TRADE-MARKS—MISREPRESENTATION.

> One C. B., father of complainant, in 1837 began the business of manufacturing and selling boots and shoes of high grade, upon all of which he placed his name "C. B.," as a trade-mark. In 1860 he took complainant into partnership under the firm name "C. B. & Son," which was thereafter affixed to the boots and shoes as the trade-mark. In 1874 C. B. sold his interest in the firm to complainant and his two brothers, whose interests were bought in 1875 and 1877 by complainant, who thereafter continued the business alone; the name "C. B. & Son" being continuously used from 1860 as the name of the firm, and as the trade-mark on the boots and shoes, which had become known by that name, and had acquired a reputation for their quality. *Held,* that complainant was not guilty of any misrepresentation, in so continuing the use of the name without indicating the changes in the actual manufacturers of the boots and shoes, such as to bar the right in equity to restrain infringements of the trade-mark.

Appeal from the Circuit Court of the United States for the Northern District of California.

This was a suit by William J. Benkert against Samuel Feder and others to restrain the infringement of a trade-mark. An interlocutory decree in favor of complainant was made by the circuit court (34 Fed. 534), and a final decree, after an accounting, was subsequently entered. Defendants appeal. Affirmed.

Mastick, Belcher & Mastick, for appellants.
Wheaton, Kalloch & Kierce, for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. This is a suit in equity brought by the appellee, a citizen of Pennsylvania, as complainant, against the appellants, citizens of California, as defendants, for an injunction to restrain defendants from using the name "C. Benkert & Son" upon boots or shoes, and from using any colorable imitation thereof, and also for damages for an alleged infringement upon complainant's alleged exclusive right to that name. The cause was heard upon the bill, answer, and testimony, before the late Judge Sawyer, who rendered an interlocutory decree granting the injunction prayed for, and directing an accounting of the profits realized by defendants by the infringement. An accounting was had, and a final decree was subsequently entered thereon, making the injunction perpetual, and for the recovery by the complainant as damages of the amount of profits shown by the accounting. The only points made upon the appeal are that neither the complainant's bill, nor the testimony adduced in support of it, discloses any title in the complainant to the exclusive use of the alleged trade-name of C. Benkert & Son, or any right in him to be heard in a court of equity to complain of the use of that name, or its imitation, by defendants.

The original bill, which was filed in 1884, alleges that about 25 years before that time Casper Benkert (who was the father of complainant) and the complainant were partners, and as such were engaged in the city of Philadelphia, under the firm name of C. Benkert & Son, in the business of manufacturing and selling boots and shoes of high grade and excellent quality, and that they continued to carry on that business under that name in the city of Philadelphia until the year 1876, when Casper Benkert conveyed his entire interest in the business to the complainant and retired therefrom, ever since which time the complainant has carried on the business in the city of Philadelphia, and has been and still is the sole owner and proprietor thereof; that during the times mentioned the partnership of C. Benkert & Son, and the complainant as its successor, manufactured large quantities of such boots and shoes, which they sold in all the markets of the world; that all of the boots and shoes so manufactured by them are of the very best and finest quality, and command a higher price throughout the markets of the world than any other boots and shoes manuf ·tured and sold in quantities by any person, firm, company, or corporation; that each and every one of the boots and shoes so manufactured and sold by the partnership of C. Benkert & Son, and by the complainant as its successor, had plainly marked upon them the name and words "C. Benkert & Son"; that that name was placed upon the boots and shoes as a trade-mark, and to indicate the ownership and origin thereof, and that during all of the 25 years then last past the boots and shoes so manufactured and sold have been known throughout all countries and throughout all the markets of the world by the name "C. Benkert & Son," which was upon them; that that name has been a trade-mark upon the boots and shoes so manufactured and sold, and that the partnership

of C. Benkert & Son, and the complainant as its successor in business, have been the sole and exclusive owners and proprietors thereof; that during all the times mentioned there has been no other firm or partnership or individual or corporation carrying on the business of manufacturing or selling boots and shoes under the name of C. Benkert & Son, and that no person or persons, firm or corporation, other than the partnership of C. Benkert & Son, and the complainant as its successor, has had the right, or now has the right, to place the name of C. Benkert & Son, or any name in imitation thereof, upon either boots or shoes. The bill further alleges that within five years before it was filed defendants have been selling, and still are selling. large quantities of boots and shoes not manufactured by complainant, marked "C. F. Benkert & Son," and "C. F. Benkert & Son, Phila.," to complainant's loss and injury.

The record contains abundant evidence of the fraudulent imitation of and infringement upon the trade-mark of C. Benkert & Son by the defendants. But the point is made that the case shows that the complainant is himself guilty of such fraudulent misrepresentation in respect to the trade-mark in question as bars him from relief in equity. It is said for the appellee that this point was not made in the court below. For the appellants it is asserted that it was made. We have no means of determining this dispute between counsel. But, whether there made or not, it must be here met and decided; for if it be true that the record shows that the case is one which a court of equity, under the principles by which such courts are controlled, will not entertain, it must be here so held, whether the attention of the trial court was called to the point or not. The evidence shows that Casper Benkert, the father of the complainant, established the business of manufacturing fine boots and shoes in the city of Philadelphia in the year 1837. In 1849 he commenced manufacturing fine boots and shoes for the trade of the Pacific coast. This proved a very successful and profitable enterprise. No goods were made except of standard high grade, by the best skilled mechanics. at the highest ruling rates of wages, and the name "Casper Benkert" became identified with exclusively fine boots and shoes throughout the United States; especially on the Pacific coast. In March, 1860, Casper Benkert took the complainant, William J. Benkert, into partnership with him, under the firm name of C. Benkert & Son. On the 1st day of June, 1874, Casper Benkert sold and transferred all his right. title, and interest in the business of C. Benkert & Son to George F. Benkert, Henry L. Benkert, and the complainant, William J. Benkert. The interest of George F. Benkert therein was purchased by William J. Benkert in September, 1875, and that of Henry L. Benkert in March, 1877, from which time the complainant has remained the sole owner of the business, which has, from the time the complainant was admitted into partnership with Casper Benkert, in March, 1860, continued to be conducted under the name C. Benkert & Son. All of the boots and shoes manufactured and sold by Casper Benkert when sole proprietor of the business were stamped "C. Benkert," and all of the boots and shoes manufactured and sold by the firm of C. Benkert & Son, and by George F. Benkert,

Henry L. Benkert, and the complainant, and subsequently by the complainant, under that firm name, were stamped "C. Benkert & Son," without any other mark or design, or any qualifying or accompanying words.    There is neither allegation nor proof that the boots and shoes manufactured by the complainant and his predecessors differed in appearance. or in any other respect, from boots and shoes made by any other person, except in the excellence of their manufacture.    There was no express assignment by Casper Benkert of the right to continue the use of his name upon his retirement from the firm of C. Benkert & Son, nor was there any express assignment or conveyance to George F. Benkert, Henry L. Benkert, and the complainant, or to the complainant after he became sole owner of the business, to continue the use of the name "C. Benkert & Son."    Nevertheless the complainant continued to conduct the business under the name "C. Benkert & Son."    In doing so, was he deceiving, and therefore defrauding, the public, to whom he offered for sale his boots and shoes?    If so, it is clear that equity will not afford him any relief, however fraudulent the conduct of the defendants may have been. "Any one has an unquestionable right," said the supreme court in Medicine Co. v. Wood, 108 U. S. 222, 2 Sup. Ct. 436, "to affix to articles manufactured by him a mark or device not previously appropriated, to distinguish them from articles of the same general character manufactured or sold by others.    He may thus notify the public of the origin of the article, and secure to himself the benefits of any particular excellence it may possess from the manner or materials of its manufacture.    His trade-mark is both a sign of the quality of the article and an assurance to the public that it is the genuine product of his manufacture.    It thus often becomes of great value to him, and in its exclusive use the court will protect him against attempts of others to pass off their products upon the public as his.    This protection is afforded, not only as a matter of justice to him, but to prevent imposition upon the public.    Manufacturing Co. v. Trainer, 101 U. S. 54.    The object of the trade-mark being to indicate by its meaning or association the origin or ownership of the article, it would seem that when a right to its use is transferred to others, either by the act of the original manufacturer, or by operation of law, the fact of transfer should be stated in connection with its use; otherwise a deception would be practiced upon the public, and the very fraud accomplished, to prevent which courts of equity interfere to protect the exclusive right of the original manufacturer. If one affix to goods of his own manufacture signs or marks which indicate that they are the manufacture of others, he is deceiving the public and attempting to pass upon them goods as possessing a quality and merit which another's skill has given to similar articles, and which his own manufacture does not possess, in the estimation of purchasers."    In the case in which these observations were made by the supreme court, and in which protection to the trade-mark there claimed was denied, the medicine was manufactured by the plaintiff in New York, while the trade-mark declared that it was manufactured by another party in Massachusetts; and being, as the court there said, founded in honesty and good sense, if they are ap-

plicable to the facts of the present case, they are controlling, not only as authority, but in principle as well.

In the case at bar the trade-mark for which protection is claimed consists of nothing beyond the mere name of the firm, C. Benkert & Son, read in the light of the circumstances under which the name was established, and in which its use has been continued. Casper Benkert for more than 20 years before the complainant entered the firm of C. Benkert & Son, was engaged in the manufacture, in the city of Philadelphia, of boots and shoes whose sole characteristic, except the name "C. Benkert," which he stamped upon them, was the excellency of their manufacture. Because of their fine quality they attained a high reputation in the markets of the country. His name it was that first gave to boots and shoes so manufactured and put upon the market their value and reputation, and when he took the complainant into partnership with him under the firm name of C. Benkert & Son, and continued the manufacture of the same quality of boots and shoes, giving them as a trade-mark the name "C. Benkert & Son," his name and skill continued, at least in part, to be a guaranty of the excellency of their manufacture, and to give reputation and value to the goods. Yet the complainant was also an original member of the firm of C. Benkert & Son, continued such throughout its existence, and finally, as his brothers one by one conveyed their interest in it to him, became sole successor to its business. The evidence shows that for more than two generations the name "Benkert" has been associated by the trade with the business established in Philadelphia by the father, first under his own name, and afterwards, in connection with the complainant, under that of "C. Benkert & Son," of making and selling boots and shoes of a specially fine grade, and in the course of that long period the name has become indicative of the quality of the goods, irrespective of the particular Benkert who was their manufacturer. Under such circumstances, we are of opinion that the public could not have been misled, and that the complainant cannot be fairly held to have incurred the charge of misrepresentation. 26 Am. & Eng. Enc. Law, 260, and cases there cited. Judgment affirmed.